## HAMILTON *vs.* WILSON & COMPANY.

1. Where a blank form was used in drawing a guano note, which contained a provision waiving the plea of worthlessness of the guano, but such provision was erased by a pen-scratch, in such manner, however, as to remain perfectly legible, it was a circumstance tending to show that a purchaser of the note was put on inquiry, and as such could be commented upon in the argument of counsel.

2. The verdict in this case is contrary to the evidence on the question of the holders of the note sued on being *bona fide* purchasers for value and without notice.

Practice in Superior Court. Notice. Promissory Notes. Fraud. Verdict. New Trial. Before Judge SNEAD. McDuffie Superior Court. March Term, 1881.

Wilson & Co. brought their suit to March term, 1880, of McDuffie superior court, against Thomas A. Hamilton, on a promissory note, dated May 9th, 1879, and due the first of November following, for the sum of $229.60, payable to the Atlantic and Virginia Fertilizing Company, or order, the consideration being for 6,804 pounds of commercial fertilizer, known as the " Eureka " guano.

The defendant filed the following pleas:

( 1 ) Failure of consideration—that the guano was worthless, and not reasonably suited to the use intended.

(2.) That R. T. Wilson & Co., the plaintiffs, were not *bona fide* holders of said note sued on.

The plaintiffs introduced in evidence the following original note, and closed:

"GEORGIA, MCDUFFIE COUNTY, May 9, 1879.
$229.60.

On the first day of November next, I promise to pay to the Atlantic and Virginia Fertilizing Company, or order, two hundred and twenty-nine 60-100 dollars, with interest, after maturity, at twelve per cent. per annum, for value received, in 6,804 pounds of commercial fertilizer, known as Eureka, delivered to me, which has been legally inspected and tagged. I have the option of paying this note in middling cotton at the rate of fifteen cents per pound, provided I deliver the

same to Dr. E. S. Harrison, at Thomson Depot, on Georgia Railroad, ginned, baled, and delivered in merchantable order, on or before the first day of November, 1879, but not otherwise.

In witness whereof, I have hereunto set my hand and seal, this the ninth day of May, 1879.              T. A. HAMILTON, [L.S.]"

Upon the back of said note appeared the following, to-wit:

"For value received, we hereby assign the within note to R. T. Wilson & Co.

ATLANTIC AND VIRGINIA FERTILIZING CO.
S. D. CRENSHAW."

Defendant then introduced interrogatories of S. D. Crenshaw, taken by plaintiff.

Witness resided in the state of New Jersey; knew R. T. Wilson & Co., and was a clerk in the office of Atlantic and Virginia Fertilizing Co., and in 1879 confidential clerk; recognized original note sued on, attached to the interrogatories, and made the transfer indorsed on the back of said note in August, 1879; was authorized to do so by board of trustees of the Atlantic and Virginia Fertilizing Co., by a resolution of the board. A certified copy of resolution he attaches to his interrogatories, marked Exhibit A, which is as follows:

"At a called meeting of the board of trustees of the Atlantic and Virginia Fertilizing Company, held at the company's office, July 2, 1878, at 1.30 o'clock, P. M., it was, on motion,

"*Resolved,* That S. D. Crenshaw, in addition to the regular officers of the Company, be authorized to indorse said paper over to R. T. Wilson & Co."

The "said paper" referred to in above resolutions, were sundry papers held by the Atlantic and Virginia Fertilizing Company from the states of North and South Carolina, Georgia and Alabama. Witness says that authority has been continued to present time. Title to note was actually transferred and absolutely belonged to R. T. Wilson & Co. Note was sent for collection by R. T. Wilson & Co. to Harrison, agent at Thomson, Ga.; receipt acknowledged

to R. T. Wilson & Co., September 11, 1879; receipt attached to interrogatories.

The Atlantic and Virginia Fertilizing Company is a joint company, under laws of State of New York. R. T. Wilson & Co. were stockholders in said company in 1879, and are now. The company manufactures the Eureka guano, and other brands. Date of transfer to the note was not attached, because that was the custom of the company.

Defendant, Hamilton, testified as follows:

Harrison, agent at Thomson, wrote me that he would sell me the Eureka guano; that it was as good as the best, and had a fine analysis. I took the guano, and when I got ready to apply it, first discovered that it was in a hard, caked condition, and old guano. Wrote agent that sacks were short of weight, and that I was dissatisfied with the guano, and would not haul the remaining sacks from depot (eight in number), and would not have bought it if I had known it was old stock; that I would give it a thorough test and analysis, and that payment would depend upon its merit. The note was given under this agreement. The waiver of guaranty was erased, with the statement that there would be no dispute if the guano proved to be good. The agent said he was satisfied of that fact, or he would not take such a note. The test was made in excellent land, prepared in the best manner, well worked and never grassy; seasons tolerably good; a short drouth in July. Test was made in accurately measured rows, at rate of 210 pounds of guano to the acre. In rows where there was no guano the yield of cotton was as great or greater than in rows where guano was applied; guano was wholly worthless as a fertilizer; was hard, and had lost 40 pounds to the sack. As analyzed by the state chemist, it showed a loss in soluble phosphoric acid about 30 per cent., and loss of ammonia about 28 per cent. Analysis I had made was above the minimum allowed by law, but not equal to the value claimed by the agent. Agent allowed the deficiency in weight; saw the note

sued on in October, 1879, in agent's possession; said it had never been out of his possession; showed me the note; did not see that it had been transferred; don't think it had been; didn't examine it closely, owing to statement of agent that it had not been out of his possession; think I would have seen transfer, if it had been made.

A. H. Sturgis, sworn for defendant, said:

Saw defendant's growing crop in summer of 1879; land was well worked, and no grass to injure crop; saw no difference in height of cotton in rows where guano was used and where no guano was used; could only find test rows by stakes.

Dr. E. S. Harrison, sworn for plaintiffs, said:

Was agent for Atlantic and Virginia Fertilizing Co. in 1879, and sold the guano to defendant; took note and forwarded it to the company before due, and it was returned to me in September, 1879, by R. T. Wilson & Co., with transfer on back of it; don't remember that I told defendant the guano was old stock or not; did not tell defendant in October, 1879, that I had never parted with possession of the note; when I sent the note to the company, it was not transferred; the guano which defendant refused to take was sold and paid for; I received the printed form of note sued on from the company; am not now agent for the guano, and there is no other agent that I know of in town. Some people prefer old stock to new, because they don't pay for moisture when guano has been well protected from weather. I considered it equally as good.

Two letters from Dr. Harrison, agent, to defendant, were introduced by defendant. The first, under date of March 10, 1879, recited that the guano was good; had a fine analysis, and he could recommend it as being as "good as the very best." The second letter, dated May 1, 1879, admitted that the guano was old stock from last season; that defendant could have it analyzed, and that if it did not come up to the standard, the company would not claim any pay for it.

The jury, under the charge of the court, returned a verdict for the plaintiff, and defendant moved for a new trial, on the following grounds.:

(1.) Because the verdict is contrary to the evidence, contrary to law and the weight of evidence.

(2.) Because the court erred in ruling that defendant's counsel could not comment on the erasures made on the face of said note, for the purpose of showing that by said erasures plaintiffs were put on notice as to the consideration of said note, nor could the defendant's counsel so comment for the purpose of showing the understanding of the parties to the contract at the time of the execution of the note, and at the time said erasures were made.

(3.) Because the plaintiffs, by being stockholders in the Atlantic and Virginia Fertilizing Company, were original owners of note, and were not *bona fide* purchasers without notice.

The motion was overruled, and defendant excepted.

H. C. RONEY; F. H. COLLEY, for plaintiff in error.

W. D. TUTT, for defendants.

JACKSON, Chief Justice.

Suit was brought by Wilson & Co. against Hamilton, on a promissory note, payable to the Atlantic and Virginia Fertilizing Company or order. The consideration expressed in the face of the note is a commercial fertilizer, known as Eureka. The defense was that the fertilizer was wholly worthless, and the proof was ample to show that it was so, and not reasonably suited to the use for which it was purchased, which is always warranted by the seller. The reply was that the plaintiffs are innocent purchasers of the note before due and without notice, and therefore are protected. So that the controlling question in the case became, are they innocent holders without notice? The jury found for plaintiffs, the court below re-

fused a new trial, and on this refusal error is assigned here.

The iron clad part of the note was erased by a line drawn across it, the whole note being the printed form of a paper so drawn as to prevent the maker from defending on the implied warranty of suitableness of the fertilizer for the use for which it was bought, " or on any other obligation of the payee of any kind, express or implied, as to character, quality or fitness of said fertilizer for the use to which it is devoted." This part, though thus stricken, could still be easily read through the line drawn over it.

1. One error assigned is, that the court would not allow the defendant's counsel to argue to the jury that this erasure was a circumstance tending to show notice to the indorsee, and to put him on inquiry. In our judgment it was such a circumstance. The fact was patent that the maker would not buy on the terms stipulated in the printed note as it stood, but required the erasure of all parts that precluded him from setting up any defense he pleased touching the consideration of the note, and thus put the purchaser on inquiry. The erasure showed this fact, and thus it was patent on the face of the paper, and the defendant had the clear right to argue that Wilson & Co. were bound to inquire touching this matter, and inquiry would have developed the fact that the value or suitableness for use of the fertilizer was warranted in law on the face of the paper which they bought. Our Code is explicit that any circumstances which would put a prudent man on his guard shall be sufficient to constitute notice to a purchaser before due. Code, §2790.

2. But independently of this point, we are clear that the facts show unmistakably that Wilson & Co. are not innocent purchasers for value of this note under our Code, section 2785. Such a purchaser must be a holder for value. It is not in evidence that a dime was paid by them for this note, and we have no idea from the evidence that

they ever did pay anything for it. It was a scheme to avoid the defense which the maker could have made to the note in the hands of the payee. A resolution was passed empowering Crenshaw to make transfer or indorse said paper over to Wilson & Co., in 1878. This note was not made until 1879, and Crenshaw swears that the resolution was continued so as to embrace this note. No transcript, of the continuance of it appears from the books of the company, though a transcript from those books shows the original resolution which referred to paper then in existence, and not to this note, not then in existence. There is no date to the transfer, and the reason given is that such is the habit of the company. Wilson & Co. are members of the company, and are evidently mere men of straw, so far as this case is concerned, to be substituted for the company so as to avoid the defense which the maker of the note had reserved.

The title of the holder can be inquired into by the maker of a note to let in his defense, and whenever it is necessary to do so in order fo protect himself. Code, §2789.

This title in these holders of this note smacks of fraud. The whole transaction is covert, subtle, concealed. It is not, to all appearance, open and undisguised. "Said paper" in the resolution has no antecedent. Why is not the preamble as well as the resolution embodied in the transcript so as to show what "said paper" was? Was it paper where the iron-clad print had been erased, and was it passed to avoid defense to that paper? Was it the transfer or indorsement for value? If so, what value? Why was it the custom of the company not to date these indorsements?

Title thus full of the footprints of fraud, is void. Code, §2751. Being very cunning and exceedingly subtle in its very essence, slight circumstances are sufficient to carry conviction of its existence. Code, §2751. It is the very opposite of *bona fides*, and no man can be a *bona fide* holder whose fingers have touched it.

In view of the facts set out in the record and reported .at the head of this opinion, we are clear that not only slight but overwhelming evidence is before us that this indorsement of this note is but part of a scheme to transfer to a portion of the plaintiffs a quantity of paper for fertilizers not otherwise collectible, to avoid an issue as to the value or worthlessness of the fertilizer, and thus subtly and under color of title in a portion of the plaintiffs to recover what all the plaintiffs, as a joint stock company, being in that character the payees of the note, could not recover.

The case must therefore be remanded for a new trial, and the defenses of the defendant be let in. Of course, if on the new trial the plaintiffs shall be able to show that they are *bona fide* holders for value, that they bought this paper in due course of trade, and not as part of a scheme to defraud the defendant out of his rights of defense, that would alter the case. But as the evidence now stands of record here the only issue, it seems to us, is was the fertilizer worthless, and the defendant had the right to make it as fully as if the payees had sued him in their own names.

On the ground, therefore, that the verdict of the jury on the question of the plaintiffs being *bona fide* purchasers for value of the note is against the overwhelming weight of the evidence disclosed in this record, and on the ground that the court erred in restricting the argument of counsel in commenting on the erasures of portions of the note, a new trial is awarded, that the law may be given to the jury in accordance with the views expressed in this opinion, and that the apparently dark shifting of the title to this paper may be cleared up, if it can be done. If that be done, and the evidence shows that they are holders for value of the paper without notice and *bona fide*, let them be protected as such; but if not, let the defendant be protected from paying for a worthless article, if the jury shall find it to be worthless.

See cited for plaintiff in error, 50 *Ga.*, 77; 5 *Ga.*, 165; 1 Dan. on Nego. Inst., 151, 119, 120, 61, 602; 2 *Ib.*, 358–9; 2 Pars. on Bills and Notes, 279, 539; Story on Prom. Notes, 197; Dudley's Reports, 243.

For defendants in error, Code, §§2182, 2776, 2785, 1675, 2855; 60 *Ga.*, 90, 654; 61 *Ib.*, 208.

Judgment reversed.