THOMAS F. BEALLE, plaintiff in error, *vs*. THE SOUTHERN BANK OF GEORGIA, defendant in error.

THOMAS F. BEALLE, plaintiff in error, *vs*. THE CITIZENS' MUTUAL LOAN COMPANY, defendants in error.

The *bona fide* holder of negotiable bonds, payable to bearer, and not due, deposited by the bearer as collateral security for the loan of money, will be protected in his title, even against the true owner, until the borrowed money be paid or he realize thereon to indemnify himself. Section 2139 of the Code must be construed to harmonize with sections 2639, 2785 and 2789, and with universal commercial law; and will be restricted to its very letter, if necessary so to restrict its meaning, in order not to unsettle long established law and usage, especially as the section is awkwardly expressed, ambiguous and uncertain. The whole subject needs legislation.

Negotiable instruments. Title. Notice. Before Judge TOMPKINS. Chatham Superior Court. January Term, 1876.

Reported in the opinion.

JACKSON, LAWTON & BASINGER, for plaintiff in error.

S. YATES LEVY; GEORGE A. MERCER, for defendants.

JACKSON, Judge.

This was an action of trover brought for the recovery of certain bonds of the Savannah and Albany Railroad Company, payable to bearer, and not yet due, with coupons attached. The bonds were deposited with one Bruên by the plaintiff, for safe keeping, with directions to collect the coupons, but without authority to dispose of the bonds or otherwise use them. Bruên borrowed $1,500 00 from defendant and deposited these bonds as collateral security, representing that he had full right and authority to control them, and concealing Bealle's title. The bank made the loan on the security of the bonds in entire good faith and total ignorance of plaintiff's title. The bonds were nominally $500 00 each—in the aggregate $2,500 00, worth eighty cents on the dollar, or $2,000 00. The plaintiff demanded the bonds, defendant refused to deliver them up, the court charged to the effect that the title

was in the bank, and the jury found for defendant; the charge was excepted to, and the question is, was the title in the bank, or in the plaintiff. The Code declares that the purchaser, *bona fide*, of a negotiable paper not dishonored, will be protected *in his title*, though the seller had none: Code, section 2639. It also declares that the *bona fide* holder for value, of any negotiable instrument, who receives it before due, and without notice of defect or defense, shall be protected from any defenses except *non est factum*, gambling or immoral or illegal consideration, or fraud in its procurement. In 37 *Georgia Reports*, 66, fraud in the procurement of the note is held to mean *fraud in the holder*, and this was affirmed in 48 *Georgia Reports*, 162. So that this is no longer an open question in this court. It seems, then, clear that the defendant, by section 2633 of our Code, would have been protected, though Bruên had no title, if it had purchased these bonds, and protected *in its title to these bonds*, for they were not due, and were negotiable by being made payable to bearer. It seems clear, too, that the maker of them could not have defeated their collection by the bank, the defendant, unless it, the bank, had procured its title by fraud in itself, for there is no pretence of illegal or immoral consideration, or of *non est factum;* indeed, no contest between the makers and the bank at all. If the bank had purchased the bonds for value, *bona fide*, it would have been protected *in its title* by section 2639, though Bruên had none, and could have collected the money, when due, from the makers, unless it had procured the bonds fraudulently. But the bank did not buy the bonds. It took them only as collateral security, or on pledge, which, perhaps, are equivalent terms. What sort of title did it thus acquire? The Code again informs us that the holder of a note, as collateral security for a debt, stands upon the same footing as the purchaser: Code, section 2788. If the word note in this section is a generic term, embracing all negotiable paper, it would seem to conclude the question in harmony with the general principles of the commercial law in the books everywhere: 4 *Georgia Reports*, 428, 289, *et passim;* 50 *Ibid.*, 508.

But it is said that section 2139 of the Code, alters or controls these sections, and alters the common law, and commercial law everywhere where the English tongue, at least, is spoken. It is said there that " the receiver in pledge or pawn of promissory notes is such a *bona fide* holder as will protect him under the same circumstances as a purchaser, from the equities between the parties, but not from the true owner, if fraudulently transferred,. though without notice to him." What does this mean? It is conceded that it is ambiguous, at least, quite awkwardly expressed. The grammatical construction would be that the pronoun "him" referred to the true owner, as the last noun in the paragraph; and thus the words, " without notice," would refer to the true owner and not to the receiver of the pledge. The words "fraudulently transferred" could then properly receive the construction which this court put upon the words, " fraud in its procurement," in 37 *Georgia Reports*, above quoted, and all the sections of the Code could be made to harmonize, which they cannot otherwise be made to do; that is, the holder must be affected with the fraudulent transfer as with the fraudulent procurement. We admit that such a construction does not appear to us at all clear, or even satisfactory; and the whole subject needs legislation. But if it be held that the holder of such collaterals—bonds payable to *bearer* and due in the far future, transferable on mere delivery—could not be pledged as collateral security by the *bearer*, to whom, on their face, they are payable, it would certainly create a great change in commercial law; it would be at war with other plain and simple provisions of the Code, and we cannot, unless this section absolutely requires this construction, so construe it. By commercial law, such paper collaterally pledged does pass title; by this section, 2139 of our Code, promissory notes are excepted, and only promissory notes. It is better to stick to the letter, even though it be but a thin bark, than to make so great a change until the general assembly shall declare what is the law. In Code, section 2138, other evidences of debt are named as liable to pledge; in this, the very next section, only promissory notes are

named.   There may be significance in this omission.  Besides, the reason and spirit of the law, the corner stones of all law, justice and right, require this construction.    Bealle put it in the power of Bruên to commit this fraud upon the bank by entrusting to him these negotiable securities, payable to bearer only, with no ear-marks at all upon them by which the true owner could be suspected to be other than Bruên, the bearer. of them ; and though he be a sufferer, it is better that he suffer than the bank, because the bank is wholly blameless, while Bealle showed want of judgment, at least, in selecting a dishonest agent.   Though both were innocent, he ought to suffer who enabled the dishonest third person to perpetrate the fraud, and such is the law : 4 *Georgia Reports,* 300; 8 *Ibid.,* 430.

In the case against the Citizens' Mutual Loan Company, the bonds had been sold by the bank prior to the demand. This fact can make no difference in the principle decided.

Judgment affirmed.