GROOMS *et al. v.* OLLIFF & COMPANY.

The phrase, "fraud in its procurement," as used in section 2785 of the code, has no reference to fraud in the contract out of which a negotiable security arises, or in the consideration for which it was given. Hence, fraud in these respects does not affect a *bona fide* holder for value, who receives a negotiable promissory note before it is due, and without notice of any defect or defence.
July 16, 1894.

*Certiorari.* Before Judge GAMBLE. Bulloch superior court. October term, 1893.

H. B. STRANGE, by brief, for plaintiffs in error.

LUMPKIN, Justice.

Olliff & Co. brought suit in a justice's court upon a promissory note signed by Grooms, indorsed by Outland, and payable to Donalson or bearer. The defendants pleaded that the note was procured by fraud, for that it was given for the purchase of a mare sold to Grooms by one Warters, who represented that the animal was perfectly sound in every respect, when in point of fact she was, both before and at the time of the purchase,

diseased and totally worthless, all of which was well
known to Warters, who fraudulently made the represen-
tation above mentioned for the purpose of deceiving
Grooms, and did thus deceive him into making and de-
livering the note to Donalson. At the trial before a
jury in the magistrate's court, the plaintiffs moved to
strike the plea on the ground that fraud in the procure-
ment of a note, " as specified in the code, meant fraud
in the procurement by the holder thereof, and could not
be set up against a *bona fide* purchaser, before due, with-
out notice of the fraud." The magistrate overruled this
motion, and plaintiffs thereupon introduced the note
and proved that they traded for it before maturity for
value and without notice of any fraud or any failure of
consideration. The magistrate then admitted evidence
to sustain the plea, and the jury found for the defend-
ants. The plaintiffs took the case by *certiorari* to the
superior court, alleging that the magistrate erred in re-
fusing to strike the plea, and in admitting evidence to
support it. The judge of the superior court sustained
the *certiorari* and gave final judgment for the plaintiffs.
The defendants excepted and brought the case here for
review.

The judgment of the court below was right. The
plea of the defendants was really a plea of failure of
consideration. Although it, in substance, alleges that
Warters fraudulently procured the defendant Grooms
to sign the note by falsely representing that the mare
was sound, when in fact she was not, in its essence it
simply means that the note was given for a worthless
animal, and therefore that there was a total failure of
consideration. It very often happens that the consider-
tion of a promissory note totally fails because of fraud
on the part of the person to whom, or at whose instance,
the note is given; but the mere fact that a fraud is thus
practiced does not change the real nature of the defence.

We are quite certain that the phrase "fraud in its pro-
curement," as used in section 2785 of the code, has no
reference whatever to fraud in the contract out of which
a negotiable security arises, or in the consideration for
which it was given.

This court, in *Robenson* v. *Vason et al.*, 37 *Ga.* 66, con-
strued the above cited section of the code, and held that
fraud in the procurement of a note, as therein specified,
meant fraud in the procurement by the holder thereof,
and not fraud in the procurement of the note as between
the original parties, of which the holder for value had
no notice. This ruling was followed in *Bealle* v. *The
Southern Bank of Georgia*, 57 *Ga.* 274; but on page 276,
Judge JACKSON said: "We admit that such a construc-
tion does not appear to us at all clear, or even satisfac-
tory; and the whole subject needs legislation." Counsel
for the plaintiffs in error sought to question the sound-
ness of these cases. Whether sound or not is immate-
rial to the present controversy, they really being inap-
plicable to the question at issue. The fraud referred to
in section 2785 of the code does not mean fraud prac-
ticed in inducing one to enter into a contract which re-
sults in the making and signing of a promissory note
or other negotiable instrument, but fraud in obtaining
possession of such a paper in the hands of another by
procuring or inducing the latter, whether the maker or
a third person, to part with it. Fraudulently inducing
a person to sign his name to a paper and to willingly
deliver it is quite a different thing from fraudulently
obtaining from that person the possession of a paper al-
ready signed and in existence. If, for instance, one
should make and execute a promissory note, intending
not to deliver it except in a certain contingency, and
another should fraudulently get possession of the note
before the contingency arose, this would be a case of
fraud in the procurement of the note. Another instance

would be where one, by falsely and fraudulently representing to a blind or illiterate person the contents of a writing, should induce that person to sign it, not knowing its contents and believing them to be different from what they really were. Again, if one, falsely pretending to be a collecting agent of a party whom he did not really represent, should induce a debtor of the latter to make and deliver to the pretended agent a check, promissory note or other negotiable instrument, payable to himself or his order, this would, perhaps, be another such instance. So, also, a thief who stole a promissory note, or a robber who took it by force from the possession of another, would be guilty of fraud in the procurement. Other illustrations to which the words "fraud in its procurement" would be applicable might be given, but the above will suffice. We feel very sure that the words were not intended to apply to cases of deceit, bad faith or false representations used and made for the purpose of inducing one to enter into a contract, and to make and deliver his promissory note knowingly and intentionally as an evidence of the same. It follows, we think, that fraud in these respects does not affect a *bona fide* holder for value who obtains a negotiable promissory note before its maturity without notice of any defect or defence. Such holder will be protected even though the note was entirely without consideration, and was given as a result of the basest fraud practiced upon the maker in inducing him to make the contract evidenced by the note.          *Judgment affirmed.*